FIRST NATIONAL BANK OF CORNELIA *v.* KELLY *et al.*

No. 13153. JUNE 11, 1940. REHEARING DENIED JULY 19, 1940.

*Bynum & Frankum, Sam Kimzey,* and *J. Herbert Griggs,* for plaintiff.

*Davis & Davis* and *Wheeler & Kenyon,* for defendants.

ATKINSON, Presiding Justice. A married woman entitled to certain undistributed funds from her deceased father's estate, and having on hand certain money derived from the same source, died leaving her husband and their minor children as her only heirs at law. The husband became guardian of the persons and prop-

erty of the children. He took possession of the money on hand and used it individually. He could have collected the other money from the executor of the estate of the wife's deceased father, but instead agreed to lend it to the executor individually, and as guardian accepted a note for principal and interest. All of the above was without any order of court, and the guardian considered himself indebted to the children for their interest in the whole inheritance. Subsequently before the children attained majority, the father, having married again, executed, without order of court, a deed purporting to convey described realty to the children in payment of the debt. *Held:*

1. In the circumstances just stated, the father became individually liable to the children for their distributive shares of the money left by their mother, and such liability was a valuable consideration for the deed.

2. "A deed to lands must be in writing, signed by the maker, attested by at least two witnesses, and delivered to the purchaser, or some one for him, and be made on a valuable or good consideration. The consideration of a deed may always be inquired into when the principles of justice require it." Code, § 29-101. A deed by a father to his minor child may be delivered by the grantor to a third person for the child. *Montgomery* v. *Reeves,* 167 *Ga.* 623 (116 S. E. 311). "The delivery of a deed is complete as against the maker at the moment when the deed is in the hands or in the power of a grantee or donee or some one for him, with the consent of the grantor and with the intention that the grantee shall hold it as a muniment of title." *Willingham* v. *Smith,* 151 *Ga.* 102, 104 (106 S. E. 117); *Parker* v. *Salmons,* 101 *Ga.* 160 (3) (28 S. E. 681, 65 Am. St. R. 291), and cit. Testimony of the grantor, referred to above, relating to delivery of the deed, was as follows: "I did not deliver the deed to Claud or Fred, when the deed was made, I delivered it to my wife, their stepmother, for the boys. . . After . . Claud . . became 21 he took possession of the land and deed, it was delivered to his stepmother for him before he was 21. I kept possession of the land, cultivated and farmed it like always, up until they became 21. I used the rents and profits and held possession of it until Claud became 21, as their guardian. . . After I made this deed I kept a record of account of my liability to these boys for rent or income on the property. I have accounted

to them for that. . . When the boys became 21 we worked together, we just made a crop. I did not pay them rent until they were 21, and I turned the land over to them. That was after this suit got up. It was after the boys became 21, I told you when I made the deed I started to paying them rent. I did not turn the deeds over to them. I held the deeds until they were 21, when I made the boys the deed. I considered it was their land, and we worked there together and they got a living off of the land. Then after they became 21 I went to paying rent. That was after this lawsuit. I paid them $150 per year standing rent." This evidence was sufficient to show delivery of the deed at the time of its execution.

3. In a suit against T. M. Grist and others, including the grantor named in the deed, on a promissory note, the First National Bank of Cornelia recovered a judgment against all the defendants. To the levy of an execution based on the judgment, upon the land conveyed to the above-mentioned children as property of the grantor, the children after attainment of majority, relying on the deed from their father, interposed a claim. On the trial of the issue as to title, testimony by the grantor that he was indorser on the note was material and competent to show motive of the grantor and a preference under the Code, § 28-301, to pay his individual debt, over his debt to the plaintiff as surety for a third person. If the testimony was inadmissible for any cause, its admission when considered in connection with evidence to the same effect, delivered by a witness for the plaintiff and admitted without objection, would not furnish ground for a reversal. *County of Butts* v. *Hixon,* 135 *Ga.* 26 (2) (68 S. E. 786); *Wheeler* v. *State,* 179 *Ga.* 287 (175 S. E. 540).

4. The judge charged the jury: "That where a conveyance otherwise valid is attacked on the ground that its purpose was to hinder, delay, or defraud creditors, two things must be shown: first, that the grantor had such fraudulent purpose, and second, that the grantees were connected with the fraud, either by participating in the intent or by having notice of it or grounds for reasonable suspicion. And in such cases, unless such things are shown, it would be the duty of the jury to find a verdict upholding such conveyance." *Held:*

(*a*) The last sentence of the charge in substance imposed upon

the plaintiff the burden of proving the fraudulent purpose of the grantor, and that the grantees were connected with the fraud, either by participating in the intent or by having notice of it or grounds for reasonable suspicion, in order to set aside the conveyance.

(b) This part of the charge ignores the fact that at the beginning of the trial the claimants expressly admitted a prima facie case in favor of the plaintiff, and assumed the burden of proof. The burden so assumed "was to show a clean title out of the defendant" (*Cothran* v. *Forsyth*, 68 *Ga.* 560, 567), which would at least include proof of the things mentioned in the charge. *Claflin* v. *Ballance*, 91 *Ga.* 411 (18 S. E. 309); *Seagraves* v. *Couch*, 168 *Ga.* 38 (3) (147 S. E. 61). See *Belton* v. *Avery*, 183 *Ga.* 559 (5) (188 S. E. 901), involving transactions between parent and child.

(c) On account of such express assumption of the burden of proof in the instant case involving a conveyance by a father to his sons, the last sentence in the quoted excerpt from the charge renders the instruction erroneous.

5. "A married woman may make contracts with other persons; but when a transaction between husband and wife shall be attacked for fraud by the creditors of either, the onus shall be on the husband and wife to show that the transaction was fair." Code, § 53-505. The foregoing statutory rule applies to transactions between husband and wife, and does not extend to transactions between other near relatives. Consequently the judge did not err, as complained of in ground 8 of the motion for new trial, in failing to charge: "A deed from a father to his son is a transaction between near relatives, and in transactions between near relatives, when the rights of creditors are involved, the onus or burden of proof is upon the parties to the transaction to show that the same was free from fraud."

6. "A complete, accurate, and pertinent instruction is not within itself erroneous because it fails to embrace an instruction which would be appropriate in connection with the instruction given." *Peeples* v. *Rudulph*, 153 *Ga.* 17 (2) (111 S. E. 548), and cit.; *Griffin* v. *State*, 183 *Ga.* 775, 778 (190 S. E. 2). On application of the foregoing principle, grounds 2 and 3 of the motion for a new trial, complaining of excerpts from the charge of the court to the jury, are without merit.

7. The judge charged: "If there was a real indebtedness in this case, and the deed was given bona fide to secure it or pay it, and taken without knowledge of any fraud, and there was no fraud in the transaction, then the fact of disparity between the actual indebtedness and the deed would not of itself justify holding that the deed was fraudulent and should be canceled." There was evidence tending to show the facts assumed in this instruction. However, in all the circumstances of the case and the issues of fraud, disparity between the actual indebtedness and the value of the property conveyed by the deed could enter into the question of fraud. It is a matter for determination by the jury in arriving at the intent and purposes of the deed. The charge in effect took this question from the jury, and consequently it was erroneous. Compare *Krueger* v. *MacDougald,* 148 *Ga.* 429 (4) (96 S. E. 867). Generally speaking, "mere inadequacy of consideration alone will not void a contract." Code, § 20-307. And "inadequacy of price is no ground for rescission of a contract of sale, unless it is so gross as combined with other circumstances to amount to a fraud." § 96-105. See *Montgomery* v. *Montgomery,* 157 *Ga.* 60 (121 S. E. 639), and cit.; *Betton* v. *Avery,* supra; *Strickland* v. *Davis,* 184 *Ga.* 76 (190 S. E. 586). However, these principles of law are not controlling where, as in the instant case, the issues involved affect a creditor attacking a deed executed by his debtor to a third person, on the ground of fraud.

8. Complaint is made of the charge: "It is contended that Tom Kelly, the defendant in fi. fa., was a mere surety on this note in question; and I will now define to you what suretyship is. The contract of suretyship is that whereby one obligates himself to pay the debt of another, in consideration of credit or indulgence, or other benefit given to his principal, the principal remaining bound therefor. You see, the surety obligates himself to pay the debt of another, in consideration of credit extended his principal, or other benefit given to his principal, and the principal remains bound therefor." There was evidence to authorize this charge. It was not argumentative. Neither was it an improper charge, as contended, in that it stated a contention of Kelly, defendant in fi. fa., who was not a party to the case, and that it served as a discrimination by the court between obligations of other creditors and the obligations due to plaintiff.

9.   Complaint is made of the following excerpts from the charge: "I charge you that where a guardian uses his wards' money for his own use, whether legally or illegally, he thereby becomes indebted to his wards for such money, and it would be his duty to restore it either in money or property." "It is contended by the defendant that Tom Kelly is merely a security on this debt; and I think there is no contention but that he was the security on the note that C. M. Grist and those other parties gave to the First National Bank." These excerpts from the charge stated correct principles of law properly adjusted to the pleadings and the evidence.

10.   Complaint is made of the court's refusal of requests to charge as follows: (a) "Minors, being non sui juris, can not consent to guardian's investment of minors' funds in real estate." (b) "A guardian of minors is not authorized to invest funds of his minor wards in real estate without first obtaining from the judge of the superior court an order authorizing such investment." (c) "The possession of property, real or personal, remaining with the vendor after an absolute conveyance is evidence of fraud." (d) "If Tom Kelly, as guardian for Claud and Fred Kelly when they were minors, took a note from Tom Grist to settle an amount that was due the claimants, Claud and Fred Kelly, from the estate of A. J. Grist, deceased, and Tom Kelly as guardian never did collect the note, the risk was that of Tom Kelly, as such a transaction would be, if made, an individual transaction of Tom Kelly's, and that if Tom Kelly made a deed of conveyance to claimants, when they were minors and when he was guardian, to settle an amount of money that he was to receive on that note, and if he did not receive the money, such deed of conveyance would be without consideration, null and void, and could not have been legally made." (e) "If the evidence discloses that Tom Kelly, as guardian for Claud and Fred Kelly, made a deed of conveyance to them for the land described in the claims, for the consideration expressed in the deed, and for the purpose that is expressed therein, to settle for money that Tom Kelly had, or was supposed to have had, as guardian for Claud and Fred Kelly, without an order of the Superior Court of Rabun County, authorizing Tom Kelly, as guardian, to invest the funds of Claud and Fred Kelly who were then minors, in the land, the transaction would be illegal, null and void, and the claim of the two minor children could not be sustained." In so far as any of these requests

correctly state abstract principles of law, they were not properly adjusted to the pleadings and the evidence.

11. The verdict for claimants was not demanded by the evidence. The errors in the charge, as indicated above, require a reversal of the judgment refusing a new trial.

*Judgment reversed. All the Justices concur.*